May it please the Court, my name is Gregory Aker. I represent the Pajaro Dunes Association in this case. There are three appeals before the Court this morning. One is the Association's appeal on the rental value issues. I will address that argument, that appeal first. For attorneys' fees, I intend to rest on the briefs on that issue given the time constraints. And for PDRA's appeal, the third appeal from the motion for summary judgment rulings, I intend to reserve my argument until after PDRA makes its argument on that, lest the Court would prefer a different procedure. Well, you've got a total of 20 minutes, sir. If you want to divide it on arguments or rebuttal, that's up to you. I understand. The primary basis of the Association's appeal on the rental value issue is that the trial court in this case improperly instructed the jury that it first had to find the Association would have rented out this building in 1996 had PDRA lived up to its contractual obligations and deeded the property to the Association as promised. I think the law is quite clear in this area where a party is suing for specific performance of a promise to convey real property. The injured party is entitled both to specific performance, title to the property, and to account for the delay in that remedy if there has been one. They're entitled to monetary compensation to relate the remedy back to the date when the property should have been conveyed. That's quite clearly stated in the Ellis case, California Supreme Court. And there is no requirement in any of the cases applying this remedy that the injured party first prove that it actually would have rented the property. In fact, before you jump into that, can you tell me whether the district court established a date of termination? Yes, that was January 1996. I believe it's in a footnote in the November 16 memorandum decision, but we had argued for an earlier date. He said as of January 1996 when PDRA announced it would make no further payments and did, in fact, make no further payments, that was a major breach of the agreement and the breach was established as of that date. Thank you. So for the last seven years, PDRA has had title to this property when under the district court's ruling it should have deeded it to the association in January of 1996. This whole would have actually rented requirement is not in the law and that's clearly demonstrated by the Meyer case, which extends the ruling of the Ellis case to non-income producing property. In the Meyer case, the plaintiff was suing because they hadn't received a residence. There was no intent even for them to rent the property and the court said you're still entitled to monetary compensation even though this is non-income producing property as a measure, a means of measuring the loss. Are they entitled to that plus the payments of rent from PDRA? In other words, they're entitled to what they would have rented it for plus the payments by PDRA, or is it one or the other? Yeah, there are two things and these are really separate items of this 1982 agreement for the right to operate within the development and to receive services from the association and to be able to use their facilities. So they weren't getting anything for letting those facilities be used? That's correct. There was no rent. It was of no economic value. It was just something that was not worth charging for. Well, PDRA built the building. They built the building. You have it rent-free for the 17-year life of this agreement, but you have to pay $3,000 a month for these other items of consideration it was receiving. In fact, it could not have rented the facility to PDRA because PDRA owned the facility and had title to the building for the life of the agreement. That was sort of like a leasehold or something, just payments to be there, right? Yeah, payments to operate within the development to receive services, use the common areas, the recreational facilities, but there was no payment under the 1982 agreement for the physical occupancy of the building. That PDRA had title to it, at least for the term of the agreement. This gets into the issue of double damages. Well, is this really, are you entitled to both the payments under the 82 agreement and rent? I think the answer to that is quite clearly if you look at the 82 agreement and if you look at our counterclaims in this action, what we have asked for is compensation for the payments due under the 82 agreement. Actually, even if there was a concern about double damages, the district court solved that problem by requiring that any damages for rental value exceed the $385,000 the court was already awarding for damages under the 82 agreement for the monthly payments. So there could be no possibility of a double recovery. You agree then it could be whichever is greater? I think we're entitled to both. I think under the law, these are separate items of compensation, but what I'm saying is if this court as a district court had any concern that there could be a potential for double damages, it could simply do what the district court did, which says you get the excess. Isn't there a clean way of resolving this dilemma as to say that the homeowners association is entitled to the contract payments up to the date of termination plus the loss of use after that date? Isn't that a cleaner way of approaching the problem? I don't think so because there is no question that PDRA has continued to operate under this agreement since 1996. They're there right now collecting rents from somebody else in the 1996, which is the date that you tell me that the district court fixed as the date of termination. That the rental agency said, okay, we realize it's over. Here's your property back and here's a check for the $3,000 or whatever it was per month for any months we didn't pay plus an interest component to catch you up. If that had happened, what would be your damages? Well, let me make clear. First of all, PDRA was not in default before January of 1996. They were current up to that time. So they recognize that there's, in my hypothetical, that they've committed major breach under the agreement and that entitles the homeowners to reconveyance of the lot and they do it immediately and at that point they're paid up on their in my hypothetical. Had they conveyed in January of 1996? Yes. I don't think there would be any damages. None. That's correct, yeah. Because the contract payments would have been made up to the point of termination and there wouldn't have been any loss of use after turnover. That's correct because the association could then have gone in either struck a new deal with PDRA or found some other rental agency and that deal would have included not only a payment for the right to business within the development, receive the services, but also now as the owner of that property, it could receive, you know, there was value there for the right to occupy that very nice building at Pajaro Dunes. So, you know, I think in essence... So back to my question. Why isn't the appropriate way to resolve questions about contract damages versus loss of use damages, etc., to simply say prior to termination you're entitled to the contract payment, post termination you may be entitled to loss of use? I think that's one way of looking at it. In essence, really... Well, the loss of use turns out to be less than $3,000 a month. Well, I think at a minimum the association is entitled to what it would have received under the agreement and... It's either whichever is greater. Yeah, that's exactly what the district court did here. I know you don't agree with that, but you say that's a possible thing if we agree whichever is greater. But you have a problem with how he described one of the two alternatives for the greater. And is your argument basically that instead of saying whatever it would have been rented for, whatever its value was during that period, it doesn't have to be rental? It could be... Suppose they wanted to use it themselves. Sure, it could be anything, but... But what's your main complaint? Assuming for the moment that the proper test were whichever is greater, $3,000 a month or whatever the value was, the use, what's wrong with the way he did the use? Well, what's wrong with the way he did the use was that he required the association to first prove that it actually would have had a renter of that facility back in 1996. And that's not the law. The law is clearly that you're entitled to... What he should have instructed the jury is that they're entitled to damages based on loss of use. Your job is to determine how much that is based on the value of this property. I think you also have to recognize though that... Doesn't loss of use mean that there has to be some market for it? If your theory is that you could have rented it out? Sure. And that's exactly what... We presented all kinds of evidence on what that value was. I thought you excluded your expert witness. That's another issue, but we... Let's assume he was right to exclude the expert witness. Sure. Was there enough evidence without that for you to establish a loss of use in excess of the $3,000? Absolutely. I can just take one piece of evidence, which was the lease of that exact same property by PDRA to in the year most recent to the trial. PDRA's president testified they had recovered $250,000 and in a property that rightfully at that point belonged to the association. The association hasn't seen a dime of that. But that's the exact same property. It's a lease agreement. We introduced evidence of that. We had then evidence of three other comparable... You're saying he didn't tell the jury that it's what they could have rented it for? He told them it's what they would have rented it for? Right. And if you look at the verdict form, the jury had to answer the first question, would the association have been able to rent this out? And they couldn't get past that. They checked the no box for that. And so they never even reached the value issue, which we think should have been the... Because the jury said they would not have been able to rent it out. And you're saying, of course they would. All they have to do is look at the evidence. Absolutely. So you think the jury reached the wrong result? Absolutely. And they were prevented from looking at the real issue because of the improper instruction. Well, you said they were told... What's the improper instruction? The improper instruction was that before the jury could reach the issue of the amount of the in 1996. And under the cases, the Meyer case in particular, that is not part of the law here. That is an element that is not required to be proven. And that the other part of the instruction you're complaining about is, and that that rent would have exceeded the contract payment. Yeah. I mean, I think they were two separate things. But as I said before, if the court has any doubt that there is double damages here, it can easily solve that problem just in the same way as the second part, the part we're assuming that it's whichever is greater. Yes. And do you think the jury understood that to mean that if they would have kept it for themselves, then they should rule against them? Or did it mean when they said they would have rented it out that there was a market for it and could have rented it? My interpretation of that instruction is that the jury had to find that that property actually would have been rented out. There was somebody there willing to step forward and to rent the property. And that's clearly not the law. But the evidence was that it was rented out, what, four years later after the breach? Yeah. I mean, if you want to just sort of transfigure that back to 96 and say that's the value in 96. Exactly. That's exactly what we did. And I think the cases stand also for the rule that when PDRA actually rented the property out in 1999, at that point, the association is entitled to the actual rents that the rents and profits that PDRA was collecting. So I would say the proper measure of damages here is that as of April of 1999, whatever PDRA was wrongfully collecting from its tenant, that money should go to the association. So that's the measure of damages I think should apply from April 1999 forward. I'd like to reserve the rest of my time unless the Court has any further questions. Good morning, Your Honors. I'm Ralph Aldridge. I represent the, we call it Pajaro. I think that's the way most people do it, Dunes Rental Association here. And let me start by saying, in the first place, this is a contract case. I think we all recognize that. Although sometimes it gets a little confused because we end up having a great deal of briefing that deals with the question of the validity of an ordinance. Okay, well, let's talk about the issue that your opponent was talking about. And let's assume for the moment the damages are whatever is greater, the $3,000 a month or whatever it could have been rented for. After 1999, your opponent says it's clear what it could have been rented for. It was rented. And for that period, at least, aren't those the damages? Well, Your Honor, our position is that that was already double damages before that because they gave both the remedy of... But that's more than $3,000 a month. He said if it's either or, whichever is greater. Let's look just at 1999. From 1999 on, they got $3,000 a month. But it was undisputed, I gather, that it was rented out for far more than that. The property was rented out. But that, Your Honor, has nothing to do with the damages or the contract. This is, as counsel has conceded, this was my client's property. They didn't rent it from anybody. They were free to rent it to anybody. And the fact that they were able to get some money from somebody for renting that property at some point has nothing to do with any contract obligations that we had or that we could have breached to the association. But I think I can address the questions that the Court was asking on this issue very simply. As the Court recognizes, their argument really is that although the Court gave the jury an opportunity to find that there were additional damages over and above the payment of the amounts that were called for by the contract, the jury concluded that there were no such damages. And so the argument is with the jury's verdict, except insofar as they can argue somehow that And the argument here is that the instruction said that the jury had to find that it would have been rented out. And then... Was that erroneous? He said that's erroneous under California law. Absolutely not. It's not erroneous. A jury always has to find in a damaged case that there would have been some scenario but for the breach that would produce the damages. It's a difference between what actually happened and what would have happened. That's what damages always are. In fact, they could show it from 99 on because you had it rented out. They can make the argument, and they did, Your Honor, that they had damages right from 96 on, that they would have been able to rent out the property. And what was your argument? That they couldn't have rented it? No, Your Honor, I don't believe that that was the argument. I didn't try the case and that's What was the argument by the developer or whatever you call it? What was your side's argument to the jury as to why they came and said, look, here, we could have rented it out. They said there's plenty of evidence. Was your side said, no, there would have been no market for it. Nobody would have rented it. What was it? Your Honor, with the caveat that I did not try the case, here's what I understand it to be. Just as it would be in a normal case, which is the argument is they haven't produced evidence that satisfies their burden of proof on that issue, that they would have been able to rent this property, that they would have had an ability from 99 on. Isn't that evidence that it could have been rented out from 99 on? Not necessarily, Your Honor. Was that evidence before the jury? It was, Your Honor. The evidence of the post-99 rental? Yes, it was. And I assume that They were permitted to offer that. The association argued that that was an indication of what the value would be for their loss of use. Absolutely. They made that argument. What was the answer? And the answer, I believe, was that was a unique arrangement between PRA and another real estate agency, and that there's no reason and no evidence that would support a belief that they would have been able to make the same deal either with that other party. And at least that's my understanding. And going back to the instruction, the instruction says you have to prove the fact of damage. That's what that instruction says. You have to prove that in the absence of this alleged breach, you would have had the property and you would have been able to rent it out. Was this a special form of verdict that is generically referred to as a go no further? I believe it was. Yes. And the first question was, has the homeowners association suffered a loss of use? Something like that. Something like that. Have they established the fact of damage? Yes. And the answer was no. Right. So they followed the instruction and did not go further. That's right. They didn't have to determine the amount because they determined that there wasn't a fact of damage established. Just so that I can follow that point, there's one more step. The argument about the instruction is that the use of the term would meant somehow that the jury had to find that there was someone waiting to rent the property from them despite the fact that they didn't own it and that somehow that created an illogical situation for the jury and therefore the jury dealt with that illogic by just answering no to that first question. But that isn't the way would is understood. That isn't the way that it's presented in an instruction and argued in every case. The fact of damage, as I said, is always dealing with a hypothetical situation. Nobody ever suggested in this case or in any other that you had to prove that a specific party was standing there waiting for you on that date and you would have in fact rented to that particular party. The instruction doesn't say that. How would they prove it otherwise? Well, you always can, Your Honor, you can always go out and say, well, there was a need for this property. There were other people who were around who had an interest in the property and would have had a need to use the property and could have made money. You normally would do it with an expert witness. Well, you could. But you're also in this case, Your Honor, the experts were excluded for both sides and they had an opportunity to essentially present all that evidence through their own non-expert witnesses. So they offered that testimony through non-experts. Well, however you do it with witnesses, you would try to establish that there was a market for that at the time, that there were customers available that had a value. The need. And that this property would have fit that need and that this is the price that people would have been willing to pay for that need. And they offered that evidence, Your Honor. And the jury concluded that it wasn't sufficient. And to you that I mean, I'm having trouble with the fact that it's clear that somebody would have rented the property from 99 on for a substantial amount. Why would a jury think there was no market? Well, not necessarily in this case, Your Honor, because. What is different about it? OK, this is a property that may or may not be able to be used for any commercial purpose at all. And that goes really to the heart of the appeal, the cross appeal in this case, which really is the heart of this case. I submit it's this is a case where the party that won the war below also won the race to the courthouse to file the first appeal and to claim that they lost a few minor battles along the way. My party clearly is the one who lost this case below. And therefore, we really are in the position of the appellant here. And I think it's very important to address the issues of our appeal, our cross appeal. And I also would ask the court for the opportunity to respond to the rebuttal because it's inappropriate for the other side to have the last word on what are really the central issues in this case, since there are issues on our cross appeal. If I could raise that and address that, I know that that's unusual, Your Honor, because I've been in this court before where there were cross appeals on minor issues that were a part of an overall appeal. And the normal rule is to simply have the main appeal and then the cross appellate argue and then a rebuttal. This is a case I believe you can see from the briefs and you'll understand from the arguments in which the cross appeal is really the central appeal of this case. Let me address that. This is a contract case. The most important rule in contract is the court has to follow the intentions of the parties as expressed in the language of the contract. That's as basic as it can be. When there's a claim that there's a breach of a contract, another very important rule comes in, particularly where specific performance is sought. And that rule says you can't get specific performance of the terms of a contract unless you can prove that you have performed all of the terms of the contract on your own behalf first. That's an essential element of your case. Now, the court failed to apply either of those rules in this case properly. And the court did so because the court misunderstood the fundamental nature of this contract. And I think it's particularly important to address that because in the initial argument, I think there was some indications that this court is laboring under some of the same misunderstandings. This contract is a model of simplicity. Six pages, including the signature page, for a contract to last 17 years. Why is it a model of simplicity? Because it deals with a very simple situation. It is not a lease of real property, as counsel has conceded. This is a case of my client being able to use their own property. They're not paying anybody for the use of their property. When you look at those six pages, you'll see what all they're paying for. They're not even paying for a right to be the exclusive rental agent, which potentially the association could have given them. They don't get that. They're a non-exclusive agent, meaning anybody else can offer those services to the members of this association. So why are they paying $3,000 a month? They're paying $3,000 a month because before they could operate a business there at the location, not as far as the association was concerned, but as far as the county was concerned, they had to have governmental approval of that. Otherwise, anybody could shut them down at any time. A competitor could shut them down at any time. So what they were getting through this agreement was essentially an insurance policy, and they were paying a premium for that insurance policy. And it's easy enough to understand that when you look at page five of the contract, which you can see what the central feature of this contract is, because it says this agreement is subject to termination and shall become void, null and void, if First Party does not obtain and maintain a use permit from the County of Santa Clara and the California Coastal Commission for a minimum period of 17 years. Well, the court said that you can raise that because of the statute of limitations, right? Exactly, Your Honor. And that's one of the first places that the court went wrong. Because what the court did then is the court said, well, you're attacking now the validity of this statute when you have said that they've breached their contract because they didn't obtain a valid permit and they haven't maintained a valid permit. You're attacking the statute. They got an order from the local commissioners, right? There was a, Your Honor, there was what purported to be a permit issued. A permit. But what was required was an ordinance in order to be, and everybody agrees on this, in order for there to be a valid permit, it would have required an ordinance. And there was no ordinance issued. That's why, and the court didn't ever address the merit of that point because the court concluded that my client was precluded from raising that. Now, whether or not my client would have been precluded from raising that issue if it was a third party trying to attack the actions of the county was another matter. But what the court found here is that my client couldn't even raise that issue in order to they failed to honor their obligation to obtain and maintain a permit. And keep in mind, the evidence in this case is undisputed that in December of 1995, before my client stopped payment on this contract, they had gone to the county and said, you never issued a valid permit because you didn't have an ordinance. And they said, and therefore, you, the county are not bound by anything that was done before. And therefore, they said to the county, these people have no right to continue operating in this property, not because we aren't giving them their permission, but because you, the county never validly acted to give them that permission. So how could you possibly square that action with an obligation to maintain as well as obtain is still operating there? Your Honor, there is the operation is still going forward under a bond that was that was issued in a state of the injunction, which precluded which would have precluded us from operating on the premises. But we're operating, Your Honor, without any assurances. If we affirm, they can look to the bond. I'm sorry? If we affirm, they can look to the bond. That's right. That's right. But if I can, Your Honor, keep in mind when this language of the contract says that the contract shall be null and void, that language doesn't appear anywhere else in the contract. The contract talks about the respective duties and obligations of the parties. And with respect to every other duty and obligation, it simply says that if a party fails to comply with the terms, that's paragraph 11 just below, then the other party may cancel and terminate this agreement by giving 90 days written notice, which was never done here. Is it your position that since this permit was never validly issued, then your client's there in perpetuity? There's no term limit on this, right? Here's what happens, Your Honor, under those circumstances. No permit is ever issued. No action is taken effectively by the county because if they were to take that action, they would have to have passed an ordinance, which they didn't do. What position does that leave my client in? That leaves my client in a position that unless my client can procure that kind of permission from the county, we're subject to being shut down any time. We're operating in the domain. I'm sorry. What happens to the buildings, the contract? Where are you both under your theory? Your Honor, and the theory that was presented below to the court was once there is a breach of this provision, the contract provides what happens. The contract is null and void. That means we don't have any particular permission from them. We don't have any assurance of a county permission. We have our own property. And whatever we can do with that property is up to us. Now, this is a building in dispute. Not just a building, Your Honor. The land underneath that was always owned by my client. Well, that was his question. You keep that in perpetuity. Exactly. Exactly. Because what it says is that once that has happened, everything is null and void. This agreement is null and void. It has no further application. And with no further application, the parties are left in the situation that they were before, which is my client owns property that it would love to be able to use for commercial purposes. But it's up to my client to have to go to the county and get whatever permissions are required in order to do that. Or it's going to have to face operating under the cloud. Have you gone to do that? I'm sorry, Your Honor. Have you proceeded to get a permit? Well, Your Honor, there has been some, there's nothing in the record, I have to say first on that point. But I think it's fair to say that my client wouldn't be operating if we didn't have some kind of understanding with the county that permits us to do that. But that isn't something that was obtained as a result of their actions. I wanted to go back one thing. I missed one thing you said about the injunction. What was the injunction? Well, required reconveyance, right? I'm sorry? The injunction required reconveyance? The injunction not only required reconveyance, Your Honor, but the, not reconveyance, keep in mind, conveyance. But the other thing that the injunction said was that my client is prohibited from operating there. Even if we can get permission from the county, the injunction prohibits us from operating at all. What's the amount of that bond? $700,000, Your Honor. So let me go back then. So what you have is an agreement that has a ripcord in it that says that if this one thing happens, this agreement is over. That's it. No ifs, ands, or buts. No notice required. No proof of damage or materiality or anything. The parties have said right here, what happens? It's your theory that the breach occurred from the very start then. Well, Your Honor, there's two possibilities, and either one gets you to the same place. One is that there was a breach right from the start. They never obtained it. You want your license fees back, I guess. Conceivably, and that was the claim that was being made, is that we'd be entitled to all of our license fees back. Now you get into that point, and you have potentially competing quantum merit claims on each side. Each side saying, you know, I rendered valuable services or something, and this contract no longer has any enforceability, and therefore I'm entitled to receive the benefits of whatever, and you have competing benefits and so forth. I suggest, Your Honor, if you look at the agreement again, you'd see that most likely you're going to come out fairly even on that, because my client also conveyed three parcels that they owned to the association at the outset of this agreement, besides paying the $3,000 per month along the way. And also, keep in mind, there's an argument made here sometimes about how much revenue, how lucrative this business was, and we were talking, and the suggestion is millions and millions of dollars worth of revenue. Keep in mind, this is a rental association, renting homeowners' homes. The revenue is passed through to the homeowner except the commission. So, yeah, big dollars going back and forth, but not a big, high-profit business. That's why they only had a $3,000 a month payment for the association's insurance policy. He's saying that the rentals you got after 99, whatever, a couple hundred thousand in rentals after 99, that was passed through to the homeowners? From the beginning, that was the case, Your Honor. From the beginning, the way it works is the homeowner isn't in a position, because they don't live there all the time and they don't want to be bothered by it, they're not in a position to rent out their property themselves. So they go to an agent. Well, when the agent rents the property out, obviously the rental goes to the homeowner except for whatever commission the agent receives. I thought there was a rental agency of some kind you had made a deal with, and they paid you a couple hundred thousand dollars. You're, now we're, I'm sorry, I misunderstood, Your Honor. Yes, that is a rental of our property to another rental agency. No, that is not. No, no, I'm sorry. There's a fair amount of money that you get from renting that out. From renting our property, Your Honor. Yes, absolutely. And if that property was, should have been your opponent's from 96 on, if, then that Your Honor, that would only be true if you simply ignore the null and void provision. Yes, I understand. I understand. Your position is that they weren't entitled to it. It's not, I'm talking about what a measure of damage is, is, and you're talking about liability. Right, exactly, Your Honor. And I'm really talking about the whole question of whether or not a party can obtain specific performance, and they did obtain specific performance here, a double specific performance. They obtained specific performance that put them in the same position as if my client had paid every dime that was owed all the way up to the present. But then they also obtained specific performance of a transfer of the property, even though as long as my client keeps paying under this agreement, the transfer wouldn't take place until 2008. So that, once again, that violates the basic rule, not only that you can't give someone specific performance without them being able to prove that they've honored every provision of the contract, but also the basic rule that you can't give someone more relief in terms of a, for a claim for breach of contract than they would have received if the contract had been fully performed. If the contract had been fully performed, yeah, they would have received the $3,000 a month up to 2008. My client would have been able to operate with a full insurance policy in place with no cloud over its ability to continue to operate in that place. And we would have conveyed the property to them in 2008, as it is. You're well over the time. I'm sorry. We might give you two minutes to rebuttal, depending on your argument. Thank you. Thank you very much. Just to go back to the jury instruction issue first, I have right here the special verdict that the court read to the jury. It's at ER 569. And the very first question the jury had to answer was, has Plaintiff Pajaro Dunes Association proved by a preponderance of the evidence that it would have entered into a new lease to rent the office building on or after January 1, 1996, if it had been the owner at that time? They answered no to that question. And they could go no further in this instruction in the verdict form, because that was the end of it. They were not permitted then to reach the amount. And I think it is clear under the Meyer case, even in properties that there's never an intent to even rent them at all, you're still entitled to damages for loss of use. Counsel was arguing that the fact of damages has not been established here. Well, of course it has. The fact of damages is the fact that the association should have had that property in January of 1996 and has been denied the use. Wasn't your theory before the jury that you would have been able to receive X amount because you could have rented it out? Well, we had to do the best we could to meet that jury instruction faced with that. You had a jury instruction. Was that agreed on in advance or before the trial? Absolutely not. We objected to it, and the court overruled our objection. No, no. I said, was that before the trial or after the trial? Before the trial. The instruction was announced before the trial? Yes. And you objected to it then? Correct. Well, it was actually announced at the pretrial conference. The judge then repeated his intention to offer that. We filed an objection. He overruled that objection. And what was your theory of damages? Well, our theory of damages was simply, we've been denied the use of this property. It's undisputed. We've been denied the use of this property for the last, however, I think it was five years at that point. We should have had it, and we're entitled to. I think the jury evaluated that. You didn't just say we've been denied the use. You must have told them what the value of that was. Sure. And we did that through the lease we've been talking about, the exact same property in 1999, and three other properties within the development that were leased out right away as soon as they, or within a very short time of when the property became available. We looked at- The jury had that in front of them. They had that evidence, right. My understanding on the expert, correct me if I'm wrong, is that the district court refused your expert, A, because your disclosure of her report was untimely, correct? That's correct. And B, because he was not satisfied under Daubert that she was qualified to render an opinion. That's correct. What's wrong with either of those? Well, I believe that the whole issue of, I would concede, first of all, that in our October 5th disclosure, we did not directly disclose the issue of rental value, but I really think the whole expert witness issue is somewhat moot at this point, because if the court remands it for an evidentiary hearing, it can easily, as in the Paoli case we cited, cure that problem simply by allowing each side to designate an expert. We've got to explore all of the issues, and one of the issues that's sort of floating around here is whether you were given a fair opportunity under the rules to present your case to the jury, and one of your principal complaints is you couldn't put on an expert witness, and it turns out the reason the expert was refused is because you didn't disclose her report in time, in part. That's the first reason the court cited, right? Correct. And the second was the court was not satisfied that Daubert had been satisfied, correct? That's correct. Okay? Yes. The standard of review, as I understand it, on both of those is abuse of discretion. That's correct. I would say that that is not by any means the principal basis of our appeal. The principal basis is the incorrect jury instruction. I do think that on such a critical issue as this, the measure of damages where expert testimony was so important and where the other side already had its own expert before trial, there really was no harm here. It was on one issue, and the court easily could have said, you know, allow each side to present their expert testimony. There would have been no prejudice. But if you had presented your expert's report in a timely fashion and satisfied Judge Oreck's, Daubert's concerns, you would have had a witness who could have helped you answer that first special verdict form in the affirmative, right? I don't think so. Now, because the witness, the expert witness was on the amount of the damages, not on whether we would have been able to rent out the building. And an expert. You didn't put somebody on from the association that said if we'd had it in January of 96, we would have rented it. We did, but not an expert witness. We put on. So you had a fact witness that said that. And the question is, is plaintiff association proved by a performance evidence that would have entered into a new lease to rent the office building on or after January 1st, 1996, if it had been the owner at that time? Yes. You put on that proof. Yes. The jury didn't believe it. That's correct. And our contention is we never should have been required to try to meet that standard under the Meyer case. And I'd like to turn now to some of the issues that were raised on PDRA's appeal. Number one, I would point out. We'll give you five minutes because you're a minute over your time. Thank you, Your Honor. That under paragraph 10 of the 1982 agreement, which counsel was referring to, it says the association is to use its best efforts to obtain and maintain a permit and that PDRA agrees to assist the association in doing that. And it doesn't say it does say null and void. But before that, it says subject to termination. Now, PDRA has argued on this appeal that, well, we can't terminate the contract because we didn't do any notice of termination. Well, where in the world is PDRA's notice of termination? If they're going to rely on this provision, it says is subject to termination and shall become null and void. My interpretation of that is that it just like the other provisions, it says you got to do this notice of termination. The district court ruled that that claim was time barred, right? Yes. And there are sort of three issues here. Number one, the claim is clearly time barred. All the arguments about how it was void and all that have been, I think, put to rest by the Ching case and all the probably half a dozen cases which said this statute applies even to actions claimed void. But putting aside the whole technical arguments about the 1982 permit, the bottom line here is that PDRA fully got the benefit of this contract because there is no dispute that since 1982, PDRA has been allowed to operate at Pajaro Dunes without any interference whatsoever from the county. They talk about this being an insurance policy and they talk about, well, there was a threat of possible county harassment. It hasn't happened in 20 years. They got the full benefits. Have they gotten 17 years worth of benefits? They got, it's more beyond 17 years, the original term of the contract in some later amendment that was extended to 2008. So there, we're about five years away from the natural termination of this contract. But there is no dispute that they got the benefit of this permit. There's also no dispute that everyone thought this permit was completely valid. I mean, PDRA was at the hearing in 1982 when the Board of Supervisors acted. If they had a problem, if they said, you know, you have to do this by ordinance, why didn't they speak up at that time? But your client later claimed it was void because there wasn't a valid ordinance, right? At some point around 96. That's correct. You're talking about the letters that were written. They're letter written in late 95, December of 95 and early 96. My answer to that is number one, it's wrong. No ordinance was required here, as we've argued in the papers. If you look at the city of Sausalito case, this is a far cry from that. All they're doing is confirming an established use of the property. You're just saying the letter was wrong, the conclusion. Absolutely right. And if you look at the record, Mr. Spitters, the president of PDRA, wrote his own letter in June of 1996, where he claimed the 1982 agreement was the permit was perfectly valid, notwithstanding any alleged procedural defects. So I mean, the parties were taking opposite positions. They were already three years down the road in this litigation. In my view, it doesn't matter what anyone says about this permit. What matters is, is it legally valid or not? Was an ordinance required? And if not, so it really doesn't matter what anyone says about it. What really matters is, is it valid from a legal perspective? And lawyers argue things in cases all the time that are completely conflicting. If that was always the truth, the court could never reach a decision. So everyone involved in this deal operated for the next 11 years under the natural assumption that the permit was perfectly valid. PDRA was allowed to operate, generated millions of dollars in commissions. And we're talking commissions here, not the revenue that's being passed on to the homeowners. And 11 years later, after it's in bankruptcy, it actually is claiming that because of a procedural defect in this permit issued in 1982, the whole deal goes out the window. And the association has to swallow the fact that it's not entitled to this property that was promised to them. Even under the most extreme interpretation of this condition, the association would certainly be entitled to relief and forfeiture in this condition. Unless the court has any further questions, I would simply ask that the court affirm the we ask that the court remand the case to the district court for an evidentiary hearing solely on the issue of damages for loss of use of the property. Thank you, counsel. Yes, we'll give you five minutes also. First, we've heard an argument about the interpretation of this contract that was not raised in the briefs today for the first time, this argument that where it says it's subject to termination, that somehow that means it's just like any other breach. But not only is that an improper argument, but it's wrong. All you have to do is read that language when it says it's subject to termination and shall become null and void. That tells you you don't have to do anything. You don't have to give any notice.  The problem that the district court had and the argument that's made here suggests is that the district court took the notion somehow that all they really had to do, all the association really had to do under this agreement was not to interfere actively somehow in our business. And as long as they didn't interfere actively in our business, then no harm, no foul. That's not what this contract says. It says it shall become null and void. It's just like the insurance contract in that analogy where there isn't a policy issued and the other side comes back and says, well, you know what? You've operated for 11 years and you never had a claim. So no harm, no foul. Maybe you've got a right to get those premiums back, but it is null and void because we didn't cause you any damage and nobody else caused you any damage that produced the claim. That's not what you buy with an insurance policy. What you buy with an insurance policy is that protection. And if that protection isn't there, you say, then the whole agreement is off. That is the end of it. Now, there's also the question of whether or not the court concluded that this whole point was time barred. Keep in mind that the court did say it was time barred, but it said it was time barred under the statutes that deal with attacking actions by a governmental body. In the first place, this wasn't an action by a governmental body. It was a failure to act, a failure to pass the ordinance that would have been required. But second, and even more importantly, this wasn't a contract time bar. This wasn't a contract statute of limitations that the court was applying. In order to do that, you'd have to have a provision somehow in this contract that said, set aside all of the normal rules on contract statute of limitations. We agree that our statute of limitations for any claim of breach of this provision will be consistent only with the 90-day statute of limitations or the shorter statute of limitations that's available for attacking the validity of a governmental action here. They didn't say anything like that. So that wouldn't be appropriate. And there's where the court went wrong. The court then said, well, because you couldn't attack it on the basis of, you couldn't attack the county's action here vis-a-vis the county. You cannot raise it as a problem of performance on their part under the contract. There is no connection between those two. And we've cited the California Supreme Court case that says, yeah, you can have an affirmative defense, for example, that's based upon a statute of limitations, even though the statute would run on any affirmative claim you might make. And that's not even this case quite because that's a step removed from even this case where it's not even a case of us raising an affirmative defense to a breach of contract claim, but a case which we did it as well, but also a case of their obligation to prove their performance and us simply raising the fact that they had not performed. That's not affirmative claim. It's not an affirmative defense. There is no appropriate statute of limitations involved there at all. But finally, let me say, even if you went that far and took the county statute of limitations and imported it into this contract, there's a very big difference in the cases we've cited, point that out, between a situation where a governmental body has failed to act and where its actions are challenged later, even though there's no question that the action has been taken place and has been done properly. They're challenged later because of some alleged substantive defect. And the difference that, and if you look at all those cases I'll submit, you'll see one thing that makes a whole lot of sense. And that is there's a mutuality there. There's a mutuality in this sense. In the cases where the court says the statute of limitations runs within the 90 days after whatever action is taken, the governmental body is precluded from claiming that they didn't act at that point. And therefore, appropriately, the person challenging them should be precluded from claiming something is wrong with their action. But in a case where the governmental body never even acts, they're never precluded by any doctrine to simply disavow any suggestion that they did. And so what, it would not be appropriate under those circumstances to preclude somebody from saying, but they didn't. And that's what those cases say. If the governmental body never acted, then the governmental body is free to disavow any suggestion that they did. And anybody else is free to raise that as a problem, no matter when they raise that as a problem. Okay, I think we've about done it for this case. Thank you, Your Honor. Thank you very much. Thank you all very much. Case just argued will be submitted. The court will stand in recess for the day.
judges: Reinhardt, Siler, Hawkins